## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## (TEXARKANA DIVISION)

| | |
|---|---|
| **GHJ HOLDINGS, LLC,**<br>             **Relator,**<br><br>        **vs.**<br><br>**GRINDMASTER-CECILWARE**<br>**CORPORATION,**<br>             **Defendant.** | Case No.: 11-098<br><br><br><br><br>**JURY TRIAL DEMANDED** |

### ORIGINAL COMPLAINT FOR FALSE PATENT MARKING

Relator GHJ Holdings, LLC ("Relator") alleges as follows:

### NATURE OF THE CASE

1.      This is an action for false patent marking under section 292 of the Patent Act (35 U.S.C. §292), which provides that any person may sue to recover the civil penalty for false patent marking.  Relator brings this qui tam action on behalf of the United States of America.

### PARTIES

2.      Relator is a Texas limited liability company with its principal place of business in Texarkana, Texas.

- 1 -

3.      Upon information and belief, Defendant Grindmaster-Cecilware Corporation is a corporation organized under the laws of the state of Delaware with its corporate headquarters located at 4003 Collins Lane, Louisville, KY 40245 and may be served through its registered agent, CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, KY 40601.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Relator's false marking claims under Title 28 U.S.C. §§1331 and 1338(a).

5.      This Court has personal jurisdiction over Defendant by virtue of, *inter alia*, Defendant's persistent and continuous contacts with the Eastern District of Texas, including active and regular conduct of business during the relevant time period through its sales in the Eastern District of Texas.

6.      This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant has violated Title 35 U.S.C. §292, and falsely marked, advertised, distributed, and sold products in the Eastern District of Texas.  Further, on information and belief, Defendant has sold falsely marked products in competition with sellers of competitive products in the Eastern District of Texas.  Such sales by Defendant are substantial, continuous, and systematic.

- 2 -

7.     Venue is proper in this District under Title 28 U.S.C. §§1391(b) and (c) and 1395(a).

## FACTS

8.     In a September 17, 2009 press release announcing the merger of Grindmaster Corportion with Cecilware Corporation, Defendant claims it is

> a global leader in the beverage and foodservice equipment industry. The new combined company develops, manufactures, markets and services a broad line of equipment for leading convenience store chains, coffee roasters, foodservice equipment dealers, QSR's and institutional clients throughout the world. Cecilware, originally founded in 1911, introduced the first fully automatic coffee urn and commercial powdered cappuccino dispensers. Grindmaster, founded in 1933, was the pioneer in commercial and retail coffee grinders and through Crathco, has been an innovator in developing cold beverage dispensing equipment.

*See* September 27, 2009 press release at http://www.grindmaster.com/press-releases.aspx (last accessed May 4, 2011).  According to Defendant, it has corporate offices in Long Island City, NY and Louisville, KY and owns and operates manufacturing facilities in Kentucky, Illinois, New York, and Thailand.  It also boasts a "U.S. Sales Team" with nineteen contacts throughout the United States, and recently announced executive Vice President of Sales positions that are located in Arizona, Kentucky, New York and Florida.     *See*

http://www.grindmaster.com/contact-us.aspx#SalesRepresentatives and April 12,

2011 press release at http://www.grindmaster.com/press-releases.aspx (last

accessed May 4, 2011).

9.     Defendant has marked and/or continues to mark its products, including, but

not limited to, its Retail Coffee Grinders (the "Falsely Marked Products") with

expired and/or otherwise inapplicable patents, including at least U.S. Patent Nos.

D296,181; 4,789,106; 4,794,853; 4,878,625; Re. 34,382; and 4,913,037 (the

"Expired and Inapplicable Patents").

10.    Such false marking by Defendant includes marking the Expired and

Inapplicable Patents upon, affixing the Expired and Inapplicable Patents to, and/or

using the Expired and Inapplicable Patents in advertising in connection with the

Falsely Marked Products.

11.    U.S. Patent No. D296,181 was issued on June 14, 1988 and expired no later

than June 14, 2002.   Nevertheless, Defendant has marked one or more of the

Falsely Marked Products with it after expiration.

12.     U.S. Patent No. 4,789,106 was filed September 18, 1987 and issued

December 6, 1988.   It expired no later than September 18, 2007.   Nevertheless,

- 4 -

Defendant has marked one or more of the Falsely Marked Products with it after expiration.

13.     U.S. Patent No. 4,794,853 was filed September 18, 1987 and issued January 3, 1989.  It expired no later than September 18, 2007.  Nevertheless, Defendant has marked one or more of the Falsely Marked Products with it after expiration.

14.     U.S. Patent No. 4,878,625 was filed July 28, 1988 and issued November 7, 1989.  It expired no later than July 28, 2008.  Nevertheless, Defendant has marked one or more of the Falsely Marked Products with it after expiration.

15.     U.S. Patent No. Re. 34,382 was reissued September 21, 1993 from a patent filed April 20, 1989.  It expired no later than April 20, 2009.  Nevertheless, Defendant has marked one or more of the Falsely Marked Products with it after expiration.

16.     U.S. Patent No. 4,913,037 was filed June 6, 1989 and issued April 3, 1990. It expired no later than June 6, 2009.  Nevertheless, Defendant has marked one or more of the Falsely Marked Products with it after expiration.

17.     Defendant has also falsely marked and/or continues to falsely mark the Falsely Marked Products with the intent to deceive by marking them with inapplicable patents, including, but not limited to, U.S. Patent Nos. D296,181.

18.     U.S. Patent No. D296,181 covers the following design for a coffee grinder.



19.   As can be seen below, however, Defendant's Model 875 on which the Expired and Inapplicable Patents were found to be marked on, does not look like U.S. Patent No. D296,181, and therefore that patent is inapplicable.



20.   In fact, Defendant's website does not show that Defendant makes or sells any coffee grinder that would be covered by U.S. Patent No. D446,275.  *See* http://www.grindmaster.com/equipment.aspx?dep=1 (last accessed May 4, 2011).

21.   Defendant has marked the Falsely Marked Products by printing the Expired and Inapplicable Patents on the labels of the Falsely Marked Products.  Such markings could have easily been updated to reflect accurate patent information.

- 7 -

22.     On information and belief, Defendant updated the labels each time a product is made to reflect its serial number.  The Defendant could have easily remarked its labels to not include the Expired and Inapplicable Patents, but decided not to in an attempt to deceive.

23.     It was a false statement for Defendant to mark the Falsely Marked Products with expired or otherwise inapplicable patents.  Defendant knew that the patents were expired or otherwise inapplicable, but nevertheless marked them on its products after they expired or when they were clearly inapplicable in an attempt to deceive the public.

24.     As discussed below, Defendant is a large, sophisticated company that regularly reviews its patent portfolio (in light of the importance of such intellectual property in the beverage and foodservice equipment industry), providing further evidence of its knowledge that the Expired and Inapplicable Patents had expired or were inapplicable when it falsely marked its products.

25.     Defendant has, and/or regularly retains, sophisticated legal counsel. Defendant has experience applying for patents, obtaining patents, licensing patents, applying for and obtaining trademarks and/or litigating in patent lawsuits.  Indeed, the United States Patent and Trademark Office's website shows that Grindmaster

Corporation is assignee to 94 patents or patent applications, one of which was filed as recent as this year, and Cecilware Corporation the assignee to 19 patents or patent applications, one of which was filed as recent as last year.   Further, Grindmaster Corporation has been a party to patent litigation before, which would have prompted it to review its patent portfolio thus providing it with a working knowledge of the expiration dates and scope of its patents.

26.    As pled above, Defendant is the result of a merger between Grindmaster Corporation and Cecilware Corporation that was announced in September 2009. Upon information and belief, during negotiations and the merger, both companies performed due diligence on the patents each other owned, which would have given it a working knowledge of the expiration dates and scope of the patents.

27.    According to the United States Patent and Trademark Office's records, the inventors of U.S. Patent No. D296,181 assigned their interests to Defendant in 1988.   Webston, Inc. assigned its interests in U.S. Patent No. 4,789,106 to Defendant in 1988 as well.   The inventor of U.S. Patent No. 4,794,853 also assigned his interest to Defendant in 1988, and then Defendant used its interests as collateral for loans in 2003 and 2006, a year before the patent expired.   A recording of the termination of the security agreement was then filed in 2009, again putting

Defendant on notice that U.S. Patent No. 4,794,853 expired.  The inventor of U.S. Patent No. 4,878,625 assigned his interest to Defendant in 1989.  The Defendant also used this patent as collateral for the same loans it received in 2003 and 2006, and again recorded the termination of the security agreement for it in 2009.  U. S. Patent No. Re. 34,382 was used as collateral for loans in 2003 and 2006, the termination of such recorded in 2009, and then used as collateral again in 2009 and 2010, after the patent expired.  Defendant also used U.S Patent No. 4,913,037 as collateral for loans in 2003 and 2006, a year before the patent expired.  A recording of the termination of the security agreement was then filed in 2009, again putting Defendant on notice that the patent expired.   Upon information and belief, Defendant's obtaining assignments of the Expired and Inapplicable Patents and using them as collateral for loans gave it working knowledge of the expiration dates and scope of its patents.

28.    As such, the patents that Defendant owns or has licensed, including the Expired and Inapplicable Patents, were and are important assets to Defendant and are consistently reviewed and monitored in the course of Defendant's business providing it with a working knowledge of the expiration dates and scopes of the

patents. Nevertheless, Defendant marked the Falsely Marked Products with the Expired and Inapplicable Patents with the intent to deceive.

29.     The expiration date of a U.S. Patent is not readily ascertainable by members of the public at the time of the product purchase.  The patent number itself does not provide members of the public with the expiration date of the patent. Basic information about a patent, such as the filing, issue and priority dates associated with a particular U.S. patent number are available at, for example, the website of the United States Patent and Trademark Office ("USPTO").  However, access to the Internet is necessary to retrieve that information (meaning that a consumer may not have the ability to retrieve the information, especially while he is in a store making a purchasing decision) and even after retrieving that information, it does not always include the expiration date of a patent.  Rather, a member of the public must also conduct a burdensome legal analysis, requiring specific knowledge of U.S. Patent laws regarding patent term expiration.  Notably, a correct calculation of the expiration date must also account for at least: a) any term extensions granted by the USPTO, which may or may not be present on the face of the patent, and b) whether or not the patent owner has paid the necessary maintenance fees.

30.     Defendant knew that a patent that is expired does not cover any product and certain patents do not cover certain products.

31.     Defendant knew that it was a false statement to mark the Falsely Marked Products with an expired or otherwise inapplicable patent.

32.     Defendant did not have, and could not have had, a reasonable belief that its products were properly marked, and Defendant knew that the aforementioned patents had expired and/or were inapplicable.

## INJURY IN FACT TO THE UNITED STATES

33.     Defendant's practice of false marking is injurious to the United States.

34.     The false marking alleged above caused injuries to the sovereignty of the United States arising from Defendant's violations of federal law, specifically, the violation of 35 U.S.C. §292(a).  The United States has conferred standing on "any person," which includes Relator, as the United States' assignee of the claims in this complaint to enforce section 292.

35.     The false marking alleged above caused proprietary injuries to the United States, which, together with section 292, would provide another basis to confer standing on Relator as the United States' assignee.

36.    The marking and false marking statutes exist to give the public notice of patent rights.  Congress intended the public to rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design, such as the Falsely Marked Products.

37.    Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas that are, in reality, a part of the public domain—such as those described in the Expired and Inapplicable Patents.

38.    Congress' interest in preventing false marking was so great that it enacted a statute that sought to encourage private parties to enforce the statute.   By permitting members of the public to bring *qui tam* suits on behalf of the government, Congress authorized private persons like Relator to help control false marking.

39.    The acts of false marking alleged above deter innovation and stifle competition in the marketplace for at least the following reasons: if an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market; false marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement; and false marking can cause unnecessary investment

in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

40.    The false marking alleged above misleads the public into believing that the Expired and Inapplicable Patents give Defendant control of the Falsely Marked Products (as well as like products), placing the risk of determining whether the Falsely Marked Products are controlled by such patents on the public, thereby increasing the cost to the public of ascertaining who, if anyone, in fact controls the intellectual property embodied in the Falsely Marked Products.

41.    Thus, in each instance where a representation is made that the Falsely Marked Products are protected by the Expired and Inapplicable Patents, a member of the public desiring to participate in the market for products like the Falsely Marked Products must incur the cost of determining whether the involved patents are valid and enforceable.  Failure to take on the costs of a reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages an infringer would otherwise have to pay.

- 14 -

42.    The false marking alleged in this case also creates a misleading impression that the Falsely Marked Products are technologically superior to previously available products, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

43.    Every person or company in the United States is a potential entrepreneur with respect to the process, machine, manufacture, or composition of matter described in the Expired and Inapplicable Patents.   Moreover, every person or company in the United States is a potential competitor with respect to the Falsely Marked Products marked with the Expired and Inapplicable Patents.

44.    Each Falsely Marked Product or advertisement thereof, because it is marked with or displays the Expired and Inapplicable Patents, is likely to, or at least has the potential to, discourage or deter each person or company (itself or by its representatives), which views such marking from commercializing a competing product, even though the Expired and Inapplicable Patents do nothing to prevent any person or company in the United States from competing in commercializing such products.

45.     The false marking alleged in this case and/or advertising thereof has quelled competition with respect to similar products to an immeasurable extent, thereby causing harm to the United States in an amount that cannot be readily determined.

46.     The false marking alleged in this case constitutes wrongful and illegal advertisement of a patent monopoly that does not exists.  As a result, the false marking has resulted in increasing, or at least maintaining, the market power or commercial success with respect to the Falsely Marked Products, providing motive for Defendant to continue to falsely mark its products.

47.     Each individual false marking (including each time an advertisement with such marking is accessed on the Internet) is likely to harm, or at least potentially harms, the public.  Thus, each such false marking is a separate offense under 35 U.S.C. §292(a).

48.     Each offense of false marking creates a proprietary interest of the United States in the penalty that may be recovered under 35 U.S.C. §292(b).

49.     For at least the reasons stated in paragraphs 2 to 48 above, the false marking alleged in this case caused injuries to the sovereignty of the United States arising from violations of federal law and has caused proprietary injuries to the United States.

## CLAIM

50.    For the reasons stated in paragraphs 2 to 49 above, Defendant has violated section 292 of the Patent Act by falsely marking the Falsely Marked Products with intent to deceive the public.

## PRAYER FOR RELIEF

51.    Relator thus requests this Court, pursuant to 35 U.S.C. §292, to do the following:

A.    enter a judgment against Defendant and in favor of Relator that Defendant has violated 35 U.S.C. §292 by falsely marking products with knowledge that the patent has expired and/or are not applicable for the purpose of deceiving the public;

B.    order Defendant to pay a civil monetary fine of $500 per false marking offense, or an alternative reasonable amount determined by the Court taking into consideration the total revenue and gross profit derived from the sale of falsely marked products and the degree of intent to falsely mark the products, one-half of which shall be paid to the United States and the other half to Relator;

C.      enter a judgment declaring that this case is "exceptional," under

35 U.S.C. §285 and award in favor of Relator, and against Defendant,

the costs incurred by Relator in bringing and maintaining this action,

including reasonable attorneys' fees;

D.      order that Defendant, its officers, agents, servants, employees,

contractors, suppliers, and attorneys be enjoined from committing new

acts of false patent marking and be required to cease all existing acts

of false patent marking within 90 days; and

E.      grant Relator such other and further relief as the Court may

deem just and equitable.

## JURY DEMAND

52.     Relator demands a jury trial on all issues so triable.

Dated: May 5, 2011                          Respectfully submitted,

                                               /s/ Randall T. Garteiser
                                            Randall T. Garteiser
                                              Texas Bar No. 24038912
                                              randall@glgnow.com
                                            Christopher S. Johns
                                              Texas Bar No. 24044849
                                              chris.johns@glgnow.com
                                            Christopher A. Honea
                                              Texas Bar No. 24059967
                                              chris.honea@glgnow.com

- 18 -

GARTEISER LAW GROUP
44 North San Pedro Road
San Rafael, California 94903
[Tel.] (415)785-3762
[Fax] (415)785-3805

**ATTORNEYS FOR GHJ HOLDINGS, LLC**